Johnson, J.
delivered the opinion of the Court.
The power of the Governor to pardon offences against the State is derived immediately from the Constitution, the 7 sec. art. 2 of which provides, that “he shall -have power to grant reprieves and pardons after conviction, (except in cases of impeachment,) in such manner, on such terms, and under such restrictions, as hé shall think proper ; and he shall have power to remit fines and forfeitures, unless otherwise directed bv law.”
The first ground of this motion denies that the Governor had, under this power, the right to superadd, as a condition of the pardon granted to the prisoner, the further condition, that he should leave the State, never again to return ; and hence concludes, that the condition as to the imprisonment having been performed, the pardon became absolute.
if we take the terms literally, there are no words known to our language which could express more fully an unlimited power over the subject, than those used in the Constitution. But words are to be construed with reference to the subject matter to which they relate : and we must therefore in determining the *286 boundaries and extent of the power, constantly keep in view 0]jject for which it was granted.
A pardon ex vi termini, presupposes a wrong done, or an of-fence committed, and forgiveness of the offender by the party injured ; and as the act of pardoning must necessarily be voluntary, the injured party must have the power of prescribing the atonement to be made : and, it as necessarily follows, that the offender has the right to accept, or not to accept, the terms proposed. He may prefer to make the reparation demanded by the law, for the wrong done, or offence committed, or the atonement substituted, at his election. It would seem, therefore, that the Executive even without the express authority given by the Constitution, to impose terms on granting a pardon, would have the right, to impose them : and all the common law writers agree, in so many words, that the king as incident to the power of pardoning, has the right to annex such conditions as he pleases ; and that whether precedent or subsequent. 4 Bl. Com. 401. Co. Lit. 274 b.
It follows then, that a condition annexed to a pardon, is, in effect, a contract between the Executive and the offender, and must be construed by the same rules which apply to other constitutional grants ; and these, I think, furnish us with a safe and salutary check over the otherwise unlimited power, which the terms of the Constitution appear to have vested in the Executive.
By the common law, a condition against law, or one which was in itself immoral, or impossible, is void : and as between private individuals, the grant will be void if the condition be precedent'; but if it be subsequent, it is good. As if a man be bound upon a condition that he will kill J. 8., the bond is, for that reason, void. But if a man make a feoffment upon the condition, that the feoffee shall kill J. S , the estate is absolute, and the condition void. Co. Lit. 206 b.
If, therefore, the Executive annex to a pardon a condition which is innnoi;aI, unlawful, or impossible, the condition is, necessarily, void; and whether the pardon will be allowed or not, must depend on the legal effect of the condition, of which I shall have occasion to speak more fully hereafter. It is maintained with great earnestness by the counsel for the motion, that it is unlawful for the Executive to substitute any punishments, *287 except such as are known to the law, as a condition of a pardon to a criminal; and hence, it is concluded, that as banishment is not known to the law, this condition is void, and the prisoner is intitled to be discharged.
This argument is founded on the assumption, that the books furnish no case in which any other has been substituted. Without conceding this fact, or that banishment was not a punishment known to the common law, it is, perhaps, a sufficient answer, that the authorities do not shew the contrary; and if the rule before laid down be correct, there can be no other limitation to the power, than that the condition shall be possible, moral, and legal.
The power to pardon unconditionally, will not be denied: and will it be contended for the prisoner, that if a condition is annexed, that it must consist- of a punishment 1 May he not substitute as a condition, that which is not injurious to the offender, and which, if left to himself, he might do of his own accord ; as that he should ask forgiveness of the party injured 1 and if that was a condition precedent, would his counsel then contend that the pardon was, therefore, void 1 And yet this is not a punishment known to the law.
It is said, moreover, that the substitution of banishment is illegal, as it has the effect of casting our convicts on our sister States, or foreign nations, and is, therefore, void. The same answer will equally apply to this argument. We have no law which prohibits it; nor is there any thing in the Constitution of the United States, or the laws of nations, which forbids us to cast off offensive members of society. A foreign State, it is true, is not bound to receive and entertain them; and if they forbid it, his entry into their territory is a violation of their laws, but one for which he alone is responsible. The substitution of banishment for death, is practised by all nations; of which, the late revolutions in Europe* and the disaffections in Ireland, furnish many, and some illustrious examples ; and in mercy to mankind, it is hoped, there will still remain, some where or other, a shelter for the oppressed, although the undeserving may also find a refuge there.
The second ground of the motion denies that the Courts possess the power to aid the Executive in enforcing the terms of the pardon, and, therefore, it is contended, that he ought to be discharged. Abstractedly this proposition is correct; for there is nr. *288 process known to our law, by which the Court can enforce the condition of banishment, or indeed any other which the Ex cu-tive might impose. From its very nature, the thing must be done, or submitted to, by the offender, of his own accord ; and this objection is wide of the mark, in supposing that that is now the subject of inquiry. The prisoner has been legally convicted of a crime for which his life is forfeited, and he was called on to shew, why the sentence of death, pronounced against him, should not be carried into execution : he shewed, for cause, a pardon from the Executive, to which the condition before mentioned, is annexed ; and the simple question is, whether the pardon is, or is not, to be allowed.
It has already been sufficienlly shewn, that the terms or conditions of the pardon are lawful, and, therefore, binding on the prisoner; and that his returning to the State was a violation of them ; and the question now is, as to the consequences. For the prisoner, it is said, that the pardon took effect from his acceptance, and the breach of the condition, in returning again to this State, constitutes the only offence, {if that be one,) for which he is answerable ; and on the other hand, it is said, that the violation of the condition rendered it null and void, and left the conviction and sentence in full operation against him : and this’ leads to the consideration of the effect of the terms on which this pardon was granted.
Every condition lo a grant, whether it be precedent, or subsequent, operates to invest the grantee with the thing granted, and leaves the condition executory, or as a defeasance on the non-performance of the condition ; and it would seem, that in the construction of the grant of a private person, express words of limitation, or reservation, are necessary to prevent the investiture. But a different rule prevails in the interpretation of a grant from the king. On this subject Lord Coke remarks, “ If a man maketb a feoffment in fee, ad faciendum, or faciendo, or ca intentione, or ad effectum, or ad propositum, that the feoffee shall do, or not do, such an act, noue of these words make the state in the land conditional, for in judgment of law, they are no woids of condition; and so it was resolved, Hil 18 Eliz. in Com. Banc, in the case of a common person: but in the case of the king, the said, or the like words do create a condition ; and so it is in the case of a will of a common person, *289 which cnse, I myself heard and observed.” Co. Lit. 204a. And the reason of this distinction, particularly as applied to a pardon, or the will of a private person, and in this respect they are analogous, will be found in ihe circumstance, that neither the person pardoned, nor the legatee, are bound to accept, nor is there any means of enforcing the condition. To intitle them to take the benefit intended, t hey must perform the condition annexed to it; for that is the only conclusive evidence of their assent. According to this rule, the prisoner’s violation of the terms of the pardon, in returning to this State, operated as a defeasance, and left the sentence in full operation against him.
In connexion with this subject, the case of the King v. Miller, 2 Bl. Rep. 797, was relied on, as shewing, that a violation of the condition of a pardon, is the subject of a new prosecution ; from whence it is concluded, that the prisoner could not be remitted to his former sentence. But that indictment was evidently founded on some of the many English statutes regulating that subject, some of which impose additional penalties ; for there is no rule of the common law, on which such a prosecution could be supported. On the contrary, it would seem to be a fair inference from the case of the King v. Madan, 1 Leach, 263, that a new indictment was not necessary ; for although the precise point was not decided, the difficulty did not arise out of the question, whether the prisoner should be remitted to his former sentence, but whether the old offence was not merged in the new offence, created by statute, of returning from transportation. It is, moreover, expressly laid down, by Sergeant Hawkins, that when a condition is annexed, the validity of the pardon depends on its performance. 2 Hawk. P. C. 294. cb. 37, sec. 45.
The case of the State v. Mary Fuller, 1 M’C. 178, is directly in point, as to the preceding questions, for notwithstanding the effort of counsel to distinguish them, the cases are substantially the same ; and I have been induced to enter upon the consideration of the subject again, merely on account of its importance to the prisoner, and its involving the construction of a power conferred by the Constitution, every provision of which should be carefully preserved, and well understood.
The third and only remaining question is, whether the prisoner is intitled to be discharged, in consequence of having been *290 illegally arrested in North-Carolina, and brought into this State, The pursuit of the prisoner into North-Carolina, and his arrest there, was certainly a violation of the sovereignty of that State, and was ah act which cannot be commended. But that was not the act of the State, but of a few of its citizens; for which, the Constitution of the United States has provided a reparation. It gives the Governor of that State, the right to demand them of the Governor of this, and imposes on the latter the obligation to surrender them ; but until it is refused, there can be no cause of complaint. And supposing it otherwise, aud that the outrage furnishes just cause of complaint, or that North-Carolina had declared war against us, how can the Court know that the restoration of the prisoner would appease her] Or if it did, by what process would the Court send him there ? All that we could do, would be, to set him at liberty, without the certainty of his returning.
The arguments in support of this position, have assumed, that the prisoner was a citizen of North-Carolina ; but that, if it even were material, is not true in point of fact. He had resided there, it is true, for several years ; but immediately previous to his arrest, he was a resident in this State, and fled, in all probability, for the purpose of avoiding it. The case, then, is this. A felon convict flies into North-Carolina, to avoid the execution of his sentence, and is pursued, and brought buck; and although the manner of doing it was illegal, the thing was in itself right, and exactly what North-Carolina was bound to do, if it had been properly required. Under these circumstances, it is not to be supposed, that the measure of reparation, which she would demand, would be very exorbitant. But, however that matter may be, it does not come within the control of the Court, but belongs to the executive department of the government. The prisoner is an offender against our laws, aud to them he owes atonement.
Motion refused.

 The judgment of Chancellor Harper, on Smith’s application for his discharge under the habeas corpus, having received the implied sanction of the Court of Appeals, on the principal point discussed, seems to be an almost necessary appendix to the argument of that Court, upon the same point. *291 The importance of the subject, however, renders any apology for its insertion in this place unnecessary. R.
Hamper, Ch. I cannot consider the prisoner, as respects the present application, as standing on any other footing, than if the motion were for his commitment on the evidence before me. Though I should be of opinion that there was not sufficient evidencebeforethe committing magistrate, to authorize the commitment, and that he acted irregularly, yet if the charge be substantiated now, by sufficient evidence, I conceive myself bound to refuse the motion. Why else is it, that new evidence is constantly received to support, or repel the charge, on an application for the benefit of the habeas corpus act? If there had never been heretofore any charge, any warrant, or any arrest, and a criminal charge, duly substantiated, were now for the first time made, it would be the duty of any magistrate, before whom such charge should be exhibited, to commit. But the law cannot require any thing so unmeaning and futile, as an order to discharge the prisoner for irregularities in the proceedings against him, which must be immediately followed by another commitment on the same charge.
I am to decide then, whether, on the evidence now before me, there appears sufficient cause for the prisoner’s commitment. The evidence of records has been produced, to shew that in 1821 he was duly convicted of a capital felony; that he was pardoned by the Governor, on condition of leaving the State, and not returning to it; and the affidavit of Neil M’Neil iq produced, and not contradicted, swearing that Jeremiah Smith was in this State, in Chesterfield District, in the years 1827 and 1828.
It is objected that M’Neil is an interested and incompetent witness, as he was one of the captors, and intitled to the reward under *he Governor’s proclamation. It does not seem to me, that M’Neil has any interest in substantiating, against the prisoner, the charge of having violated the condition of his pardon. The reward is offered by the Governor, for arresting the prisoner, and'delivering him to a proper officer. M’Neil’s title to the reward does not, in any degree, depend on the fact of the prisoner’s having been in Chesterfield in 1827, and 1828 ; which is the sole fact contained in his affidavit. If M’Neil did arrest, and deliver him, according to the meaning of the Governor’s proclamation, he is intitled to the reward, although it should turn out, that Smith has never violated the condition of his pardon, and although he should be finally discharged. The charge may be established, and Smith undergo the penalty of the law, without intitling the alleged captors to the reward. It is for the Governor to consider whether such an arrest, as was made in this case, comes within the ti ue spirit and intent of his proclamation.
I cannot doubt that the evidence before me sufficiently substantiates a charge, which requires the commitment of the prisoner. But the ground principally relied on for his discharge, is the irregularity in the manner of his arrest. He was arrested by means of a violation of the laws and jurisdiction of the State of North-Carolina. I have already said, in general, that when an individual, charged with a criminal offence, is before a magistrate, the sole inquiry is, does there appear sufficient cause for his commitment, or binding him to his answer. No matter what irregularities have occurred in his arrest, av whether he has ever been arrested or no, if it appear, that the laws have *292 been criminally violated, it is the duty of the officer to take measures for vindicating them by a prosecution. It is certain, that no conceivable violation of the laws of our own State, in procuring a prisoner’s arrest, could authorize the discharge of one who is duly charged. Though a house, or a city, bad been fired, in order to arrest him as he escaped from the flames; or any cruelty, or injustice had been practised towards him; the law would say, those, who have been guilty of such enormities, must answer for their own acts, and the prisoner for his. I am still to seek for the principle, or the authority, which will make a difference, when the arrest has been made by means of the violation of the laws of another jurisdiction. The prisoner is charged with, a felonious violation of the laws of this State : It is answered, that other persons have been guilty, in relation to him, of an outrageous violation of the laws of another State, and therefore he ought to be discharged: I perceive jio connexion between the premises and the inference. The chief argument is drawn from supposed consequences, which are likely to follow, by bringing our government into collision with others. This is less to be apprehended among the Slates of the Union, where the Federal Constitution makes provision for a satisfaction of the violated jurisdiction. But suppose the case of a foreign State. There is no offence in trying, and, if he be guilty, convicting the subject of a foreign government, who has been guilty of a violation of our laws, within our jurisdiction. Or, if he had made his escape from our jurisdiction, and by any accident were' thrown within it again; if he were shipwrecked on our coast, or fraudulently induced to land, by a representation that it was a different territory, with a view to his being given up to prosecution; there would seem to be no reason for exempting him from responsibility to our laws. In the case we are considering, the prisoner is found in our jurisdiction, in consequence of o lawless act of violence exercised upon him by individuals. The true cause of offence to the foreign government, is the lawless violation of its territory. But a similar violation of a foreign jurisdiction might be made for other purposes; and it would not be in the power of our tribunals to afford satisfaction. An individual might be kidnapped and brought within our territory, for the purpose of extorting money from him, or murdering him. It would not seem to be an appropriate satisfaction to the injured government, to exempt a person justly liable to punishment under our laws, where we have no means of giving up' to punishment those, who have violated its laws. But there is no difficulty among the States of the Union. Upon demand by the State of North-Carolina, those who have violated its laws will be given up to punishment.
The case of Rowland Stephenson, in New-York, has been cited; and I suspect that case has suggested the point made in this. There is, however, no analogy in the cases. Stephenson having been brought into the State of New-York, by unlawful violence, was arrested in a civil suit, by a subject of Great Britain, who was accessary to the violence that had been used. It .is essential to the existence of a civil suit, that process should be regularly served, or the arrest regularly made. If these are shewn to have been irregular, the suit is at an end. A person may be, sued in a tiansitory action wherever he is found; but even within the" same State, if a plaintiff, con coiving himself likely to gain an advantage, by suing the defendant in a *293 different district, from that wherein he resides, should have him carried by force across the boundary, in order that the sheriff might arrest him, no doubt he would be discharged. So also, perhaps, if he were induced to cross tiie boundary by fraud. For many other causes the service of a civil process will be set aside. But all this has no relation to a criminal proceeding, nor can any argument or analogy be drawn from one to the other. Sheriff Parkins, a British subject, might, by the courtesy of Nations, sue in the Courts of New-York; but he was bound lo use the privilege fairly, and could not intitle himself to it by fraud, or violence. Stephenson had been guilty of no violation of the laws of New-York, or undoubtedly he would not have been permitted to go with impunity, because a Bow-Street officer had been guilty of an act of unlawful violence towards him.
The newspaper report of an English decision, seems to be in point. An individual against whom a bill had been found for perjury, was arrested, by an officer having a warrant, in Brussels. Neither the officer nor the warrant, had any authority in Flanders ; and it could be no more than'an arrest by any other individual. The opinion of Lord Tenterden seems to intimate, that the doubt, if there was any in the case, arose from the circumstance, that the prisoner was charged with a misdemeanor, and not with a felony; perhaps from the consideration, that a private person is not authorized to arrest one who has been guilty of a misdemeanor, although he may arrest a felon. He states, however, that he had known several instances of persons so arrested for felony. Certain it is, that in this country, hundreds of similar instances have occurred. Formerly, ‘when the laws were less regularly executed, than at present, nothing was more common, than that private individuals should pursue felons, horse thieves, and negro thieves, into other States, and bring them back to the jurisdiction in which their offences had been committed. If I mistake not, there are similar instances of daily occurrence even now; particularly between the principal cities of different States.
I think the abuses of such a practice are as well guarded against as human laws ean effect. Whether the prisoner be guilty or innocent, his captors have violated the laws of North-Carolina, and may be given up to punishment. They are also liable to him, in a civil suit, for the violence committed. If it shall turn out that he is innocent, they will have incurred similar responsibility under the laws of this State.
I need not observe, that the prisoner’s being brought by force into the State, cannot constitute any violation of his pardon. If the fact, of his having returned to the State heretofore, be denied, or excused, as having been involuntary, that must be shewn to the Court, which will be called on to enforce the sentence against him. If facts are disputed, I suppose he will be intitled fo have themtrDd by a jury. At present he must be remanded, and the motion for his discharge is therefore refused.
Gregg, and M’Cord, for motion.
W. F, Desaussore, contra.